```
------------------------------x
                              :
EMMA LAUREN COTE              :     Civ. No. 3:17CV01843(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,           :
ACTING COMMISSIONER OF        :     August 28, 2018
SOCIAL SECURITY               :
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

The plaintiff, Emma Lauren Cote,[1] brings this appeal pursuant to §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Acting Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand. [Doc. #17]. Defendant has filed a motion for an order affirming the decision of the Commissioner. [Doc. #22]. Plaintiff has filed a reply. [Doc. #23]. For the

---

[1] In her original complaint, plaintiff was identified as Phillip W. Cote, Jr. See Doc. #1. On April 20, 2018, plaintiff filed a motion to amend the complaint to reflect the fact that plaintiff's name has been changed to Emma Lauren Cote. See Doc. #19. The Court granted the motion. See Doc. #20. On April 23, 2018, plaintiff Emma Lauren Cote filed an Amended Complaint. See Doc. #21. The Court uses the feminine pronouns to refer to plaintiff throughout this Ruling.

reasons set forth below, defendant's Motion for an Order Affirming the Commissioner's Decision is **GRANTED. [Doc. #22].** Plaintiff's Motion for Reversal or Remand of Commissioner's Decision is **DENIED. [Doc. #17].**

## I.     PROCEDURAL HISTORY[2]

Plaintiff filed concurrent applications for DIB and SSI,[3] alleging disability beginning on October 30, 2013. See Certified Transcript of the Administrative Record, compiled on December 28, 2017 (hereinafter "Tr."), 175-186. Plaintiff's date last insured is December 31, 2018. See Tr. 189. Plaintiff's application for DIB was denied initially on August 21, 2014, see Tr. 87-90, and upon reconsideration on October 14, 2014, see Tr. 92-94. Plaintiff was self-represented throughout that process.

On May 3, 2016, plaintiff, represented by Attorney John Wirzbicki, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Eskunder Boyd. See Tr. 28-61. A vocational expert, Susan Howard ("VE"), also appeared and testified at the hearing. See Tr. 28-30. On June 1, 2016, the ALJ issued a decision finding that plaintiff "has not been under

---

[2] The parties filed a joint Stipulated Medical Chronology on March 28, 2018. See Doc. #17-2.

[3] On July 24, 2018, the parties filed a Joint Status Report stating the "parties agree that this case concerns DIB benefits only, and that references to SSI in the plaintiff's brief may be ignored." Doc. #27 at 2. Therefore, the Court addresses only plaintiff's application for DIB.

a disability, as defined in the Social Security Act, from October 30, 2013, through the date of this decision[.]" Tr. 22. Plaintiff filed a Request for Review of Hearing Decision. See Tr. 171. On September 14, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's June 1, 2016, decision the final decision of the Commissioner. See Tr. 1-5. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and now moves to reverse and/or remand the Commissioner's decision. [Doc. #17]. On appeal, plaintiff asserts that the ALJ made various errors that prevented her from receiving a full and fair hearing. See generally Doc. #17-1.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Second, the court must decide whether the determination is supported by substantial evidence. See id. Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure

that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit

intelligible plenary review of the record." <u>Williams ex rel.
Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988). It is
well established that "an ALJ's credibility determination is
generally entitled to deference on appeal." <u>Selian v. Astrue</u>,
708 F.3d 409, 420 (2d Cir. 2013); <u>see</u> <u>also</u> <u>Kessler v. Colvin</u>, 48
F. Supp. 3d 578, 595 (S.D.N.Y. 2014) ("A federal court must
afford great deference to the ALJ's credibility finding, since
the ALJ had the opportunity to observe the claimant's demeanor
while the claimant was testifying." (citation and internal
quotation marks omitted)); <u>Pietrunti v. Dir., Office of Workers'
Comp. Programs</u>, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility
findings of an ALJ are entitled to great deference and therefore
can be reversed only if they are patently unreasonable."
(citation and internal quotation marks omitted)).

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. "In
reviewing a final decision of the SSA, this Court is limited to
determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct
legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.
2012). **"[W]hether there is substantial evidence supporting the
appellant's view is not the question here; rather, we must
decide whether substantial evidence supports <u>the ALJ's</u>**

**decision**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); <u>see also</u> 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities[]" to be considered "severe").[4]

---

[4] Throughout this decision, and unless otherwise specifically noted, the Court applies and references the versions of those Regulations that were in effect at the time of the ALJ's decision. See <u>Lowry v. Astrue</u>, 474 F. App'x 801, 805 n.2 (2d

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim); see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing Lowry, 474 F. App'x at 805 n.2)).

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

**IV.** **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, ALJ Boyd concluded that plaintiff was not disabled under the Act. See Tr. 23. First, the ALJ determined that plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2018." Tr. 15. The ALJ then turned to Step One of the evaluation process and found that plaintiff had "not engaged in substantial gainful activity since October 30, 2013, the alleged onset date[.]" Id.

At Step Two, the ALJ found that plaintiff had three severe impairments: "generalized anxiety disorder, attention deficit hyperactivity disorder ('ADHD') and Asperger's Syndrome[.]" Id.

At Step Three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 15. Specifically, the ALJ found that plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 and 12.06." Id.

Before proceeding to Step Four, the ALJ determined plaintiff had the RFC

> to perform a full range of work at all exertional levels
> but with the following non-exertional limitations: [she]
> can perform simple, routine, repetitive tasks; can

9

sustain concentration, pace and persistence for two-hour segments; should have brief and superficial interaction with co-workers, but no interaction with the public; no work requiring independent judgment making (i.e., no setting work duties or work schedules for others and no responsibility for the safety of others) and [she] requires an environment with little to no changes in work duties or routines.

Id. With these limitations, the ALJ found at Step Four that plaintiff was "unable to perform any past relevant work[.]" Tr. 21. Proceeding to Step Five, however, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform[.]" Tr. 22.

Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act "from October 30, 2013, through the date of this decision[.]" Id.

**V.   DISCUSSION**

On appeal, plaintiff asserts that the ALJ erred in numerous respects. Specifically, plaintiff alleges the following errors:

1. At Step Two, the ALJ erred by finding that plaintiff had no severe physical impairments;

2. At Step Three, the ALJ erred by failing to consider whether plaintiff met or equaled Listings 12.08 and 12.10;

3. At Step Three, the ALJ erred by finding that plaintiff did not meet Listing 12.02 or 12.06;

4. In determining the RFC and at Step Five, the ALJ erred in his assignment of weight to the various medical opinions in the record;

5. The ALJ erred by failing to adequately account for plaintiff's limitations in the RFC, and by discounting plaintiff's credibility; and

6. At Step Five, the ALJ erred by relying on unreliable testimony from the VE.

The Court will address each of plaintiff's arguments in turn.

## A.    Step Two -- Severe Physical Impairments

Plaintiff asserts the "ALJ erred at Step 2 inasmuch as he failed to find any severe physical medical impairments." Doc. #17-1 at 7 (sic). Plaintiff argues that she has physical impairments that "more than minimally impact [her] ability to work[,]" including "mild obstructive sleep apnea ..., a history of carpal tunnel ..., degenerative spurring in the thoracic spine with a history of back pain and knee pain ..., [and] a demyelinating ulnar neuropathy on [her] left arm[.]" Id. at 7-8. Defendant argues that "Plaintiff has failed to carry her burden of showing that she had a severe physical impairment." Doc. #22-1 at 6.

At Step Two, the ALJ determines the medical severity of the plaintiff's alleged impairments. See 20 C.F.R.

§404.1520(a)(4)(ii); see also id. at (c). "A claimant seeking social security benefits must bear the burden of showing that [she] has a medically severe impairment or combination of impairments." Rodriguez v. Berryhill, No. 16CV1494(VLB), 2018 WL 1660552, at *8 (D. Conn. Apr. 5, 2018) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)). An impairment "is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities[.]" SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" if it constitutes only a "slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Id. (citation omitted). "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, itself, sufficient to deem a condition severe." McConnell v. Astrue, No. 6:03CV0521(TJM), 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008) (quotation marks and citation omitted).

At Step Two, the ALJ found that plaintiff had three severe impairments: "generalized anxiety disorder, attention deficit hyperactivity disorder ('ADHD') and Asperger's Syndrome[.]" Tr. 15. The ALJ made no findings regarding plaintiff's alleged physical impairments.

The ALJ did not err by finding that plaintiff has no severe physical impairments. In her initial application for benefits, plaintiff raised only the following impairments: "Autism Spectrum Disorder/Asperger Syndrome[,]" "General Anxiety Disorder[,]" "Attention Deficit Disorder[,]" "Bone spurs in spine[,]" and "Insomnia[.]" Tr. 201. Plaintiff did not assert sleep apnea, carpal tunnel, back and knee pain, or "a demyelinating ulnar neuropathy on [her] left arm" until April 28, 2016, in her Pre-Hearing Memorandum. Tr. 266. This failure is meaningful. See Ocasio v. Astrue, 32 F. Supp. 3d 289, 296 (N.D.N.Y. 2012) (citing plaintiff's failure to "identify depression as a disabling condition in her original disability report[]" as evidence supporting "ALJ's finding that Plaintiff's depression was a non-severe impairment[]"); Molt v. Comm'r of Soc. Sec., No. 1:05CV0418(NPM)(VEB), 2009 WL 5214920, at *7 (N.D.N.Y. Dec. 28, 2009) (finding ALJ was "correct in noting that Plaintiff failed to allege that any of her physical impairments limited her ability to work" because plaintiff failed to list physical impairments on her disability reports). It is also notable that plaintiff's attorney questioned her about any "problems sleeping[,]" but did not ask her about any of her other alleged physical impairments at the hearing. Tr. 50; see Battle v. Colvin, No. 13CV547(JTC), 2014 WL 5089502, at *6 (W.D.N.Y. Oct. 9, 2014) (finding the ALJ did not err by

failing to consider plaintiff's obesity and noting that "plaintiff was not questioned by her attorney about any specific functional limitations relating to obesity, nor did she allege obesity as a disabling impairment or include obesity as a factor limiting her ability to work in any of the disability reports submitted in association with her claim").

Plaintiff has not provided evidence demonstrating that she has any severe physical impairments. In support of her argument that her "mild obstructive sleep apnea" constitutes a severe impairment, plaintiff cites only to Dr. David R. Hatch's October 1, 2007, sleep medicine consultation. See Doc. #17-1 at 7. Dr. Hatch's consultation was conducted over six years before plaintiff's October 30, 2013, alleged onset date. "The regulations require the plaintiff to present evidence of a severe impairment during the time that he or she claims to be disabled." Mercado v. Astrue, No. 3:09CV1576(CFD)(TPS), 2010 WL 9478984, at *3 (D. Conn. July 26, 2010). Moreover, Dr. Hatch found that plaintiff's obstructive sleep apnea was "mild in severity[]" and not "a likely cause of [her] symptoms." Tr. 319.

On November 18, 2015, Julie Martin, APNP ("APNP Martin") at the Internal Medicine Group noted that plaintiff reported "difficult sleep, some nights good, some bad." Tr. 579. APNP Martin also noted that plaintiff reported difficulty sleeping on April 7, 2016. See Tr. 590. However, there is no indication that

14

plaintiff's difficulty sleeping was caused by her alleged sleep apnea. In fact, APNP Martin implied that it may have been caused by anxiety, writing: "Insomnia, Therapy with Jonathan Dean, patient will address anxiety/sleep issues with him. Advised on use of bedtime journaling to help fall asleep at night." Tr. 591. These records do not demonstrate that plaintiff's sleep apnea significantly limited her in any way, much less plaintiff's "abilities to do basic work activities[.]" SSR 96–3p, 1996 WL 374181, at *1; see Tr. 579-83; 590-91. Additionally, APNP Martin indicated on November 11, 2013, see Tr. 440, April 21, 2015, see Tr. 574, and March 8, 2016, see Tr. 586, that plaintiff had denied having trouble sleeping. Accordingly, plaintiff fails to demonstrate that her sleep apnea is a severe impairment.

Plaintiff also fails to show that her carpal tunnel is a severe impairment. Plaintiff cites only to Dr. Julius F. Delparine's finding on March 8, 2012, over a year before plaintiff's alleged onset date, that plaintiff had "electrodiagnostic evidence of a mild to moderate left carpal tunnel syndrome." Tr. 305; see Mercado, 2010 WL 9478984 at *3. Notably, APNP Martin observed on November 17, 2014, that "Tinklpaugh/Kardestuncer ruled out carpel tunnel[.]" Tr. 420 (sic). Plaintiff testified at the hearing that she can do math problems and use the internet, see Tr. 40-41, 46, and APNP

Martin stated that plaintiff "is on 'screens'/tablets the majority of the time[,]" Tr. 420. These reports suggest an ability to use her hands. Therefore, Dr. Delparine's single test fails to establish that the alleged carpal tunnel significantly limited plaintiff's "abilities to do basic work activities[.]" SSR 96-3p, 1996 WL 374181, at *1.

Plaintiff further fails to establish that her "degenerative spurring in the thoracic spine with a history of back pain and knee pain" is a severe impairment. Doc. #17-1 at 7-8. Plaintiff cites to three records in support of her argument, two of which date from well before plaintiff's alleged onset date of October 30, 2013. See Mercado, 2010 WL 9478984 at *3. A February 29, 2008, Family Medicine Center record states that plaintiff's "knee exam [was] entirely WNL except some 'popping' felt ... upon extension[,]" and recommends that plaintiff "back off on impact & heavy leg weights[.]" Tr. 299. A March 21, 2011, Manchester Memorial Hospital exam found "minimal degenerative spurring in the thoracic spine." Tr. 309.

Plaintiff cites to only one record from after her alleged October 30, 2013, onset date: APNP Martin's November 17, 2014, treatment note. See Doc. #17-1 at 8. APNP Martin wrote that plaintiff reported "intermittent pain in neck and upper back." Tr. 420. However, her examination found that plaintiff had "no spinal tenderness[]" and that plaintiff had normal range of

motion and no pain in her lower extremities. Tr. 423. Moreover, APNP Martin consistently found that plaintiff had a "normal gait" and was "able to stand without difficulty[.]" Tr. 441, 448, 453, 582, 587, 590. Therefore, plaintiff fails to establish that her alleged back and knee conditions cause any limitation of her ability to do basic work activities.

In support of her claim that the "demyelinating ulnar neuropathy" in her left arm constitutes a severe impairment, plaintiff relies on Dr. Tinklepaugh's May 22, 2013, treatment record. Doc. #17-1 at 8. Dr. Tinklepaugh found that plaintiff had a "very mild demyelinating ulnar neuropathy of the left upper extremity." Tr. 443. Dr. Tinklepaugh determined, however, that the "demyelinating ulnar neuropathy" did not show "any focal slowing across the elbow" or "a significant loss of CMAP amplitude." Id. Dr. Tinklepaugh made no findings that suggest that the ulnar neuropathy would limit plaintiff's work abilities. See id. On November 18, 2015, APNP Martin noted that plaintiff denied having joint pain, and found that plaintiff's left arm had "no tenderness to palpation[,]" normal range of motion, and "no joint crepitus present or pain with motion present[.]" Tr. 582. Therefore, plaintiff fails to show the "mild demyelinating ulnar neuropathy on [her] left arm" is a severe impairment. Doc. #17-1 at 8.

Finally, plaintiff contends that consultative examiner Dr. Reiher's Disability Evaluation established that plaintiff has a severe physical impairment because Dr. Reiher limited plaintiff to light work. See Doc. #17-1 at 8-9. On August 14, 2014, Dr. Reiher conducted a physical examination of plaintiff, which indicated "[n]o spinal tenderness[,]" normal joints, and normal neurologic functions. Tr. 352. Dr. Reiher determined that plaintiff

> could be expected to sit for 8 hours in an 8-hour workday. [She] could be expected to stand for 8 hours in an 8-hour workday. [She] requires no assistive devices for ambulation. [She] could be expected to lift 10 pounds frequently for two-thirds of a workday. [She] has postural limitations of low back pain with repetitive bending and crouching. [She] has no manipulative limitations. [She] has no workplace environmental limitations.

Tr. 353.

"[T]he opinions of consulting sources, unlike those of treating sources, are entitled to no special deference." Lamorey v. Barnhart, 158 F. App'x 361, 363 (2d Cir. 2006). "[A] consulting physician's opinions or report should be given limited weight ... because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (quotation marks and citations omitted).

The ALJ gave "Dr. Reiher's assessment little weight, as the finding for any physical limitation is without support from other medical records." Tr. 20. The ALJ further noted that "the records from Internal Medicine Group did not detail <u>any</u> physical limitations[.]" <u>Id.</u>

Plaintiff contends that the ALJ's assertion that the Internal Medicine Group records did not detail any physical limitations is "only partly true[]" because plaintiff "complained of trouble sleeping[]" in November 2015. Doc. #17-1 at 8. However, as discussed above, there is no indication that plaintiff's sleeping problems were caused by plaintiff's alleged sleep apnea or any other physical limitations. <u>See</u> Tr. 579-83. During the hearing, plaintiff did not mention sleep apnea or any other physical impairment in response to her attorney's question regarding her "problems sleeping[.]" Tr. 50. Instead, plaintiff testified that she feels "a good bit of anxiety when [she is] trying to get to sleep oftentimes." Tr. 51.

Moreover, Dr. Reiher's evaluation did not assess plaintiff's alleged sleep problems. <u>See</u> Tr. 351-53. Plaintiff fails to cite to any records supporting the limitations identified by Dr. Reiher. Therefore, the ALJ did not err by finding that Dr. Reiher's findings were inconsistent with the Internal Medicine Group notes.

Substantial evidence supports both the ALJ's decision to afford Dr. Reiher's opinion little weight and the ALJ's determination that plaintiff did not have severe physical limitations. At the hearing, plaintiff suggested that her physical impairments do not limit her ability to work, testifying that her medical limitations were "not really a question of what I can or can't do." Tr. 41. Plaintiff also testified that she dresses, grooms, and bathes herself, performs household chores, microwaves food, drives, and goes shopping. See Tr. 39-41.

As described above, APNP Martin's treatment notes supported the ALJ's finding that plaintiff does not have any severe physical impairments. Furthermore, plaintiff's therapist, Jonathan Dean, LMFT ("LMFT Dean") wrote on May 27, 2015, that plaintiff "maintained a walking regimen to date." Tr. 598. LMFT Dean also noted that plaintiff appeared to be agitated that she was "required to go through a physical examination for DSS[]" and that plaintiff had agreed to amend her claim to clarify that she "was seeking disability [] not for physical issues rather for mental health and cognitive reasons." Tr. 594. Both State consultative professionals found that plaintiff's spine disorder was "[n]on [s]evere" and did not assess plaintiff to have any other physical impairments. Tr. 67, 79.

Accordingly, substantial evidence supports the ALJ's Step Two finding that plaintiff did not have any severe physical impairments, and the ALJ's failure to explicitly address plaintiff's alleged physical problems was not error. See Manson v. Colvin, No. 7:15CV0676(GTS), 2016 WL 4991608, at *5 (N.D.N.Y. Sept. 19, 2016) ("The Court finds that the ALJ did not err by not discussing Plaintiff's obesity in this case because Plaintiff did not allege that her obesity was a disabling impairment and no medical opinion indicated that Plaintiff's obesity limited her ability to perform basic work activities."); Younes v. Colvin, No. 1:14CV170(DNH)(ESH), 2015 WL 1524417, at *4 (N.D.N.Y. Apr. 2, 2015) ("[Plaintiff] did not claim obesity as a disabling impairment, and even in current briefing before the court [plaintiff] fails to identify any limitation occasioned by her obesity. Under these circumstances, [the ALJ's] failure to address explicitly [plaintiff's] obesity is not an error warranting remand." (footnotes omitted)); Eralte v. Colvin, No. 14CV1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) ("When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that the omitted condition should not be included as a severe impairment." (quotation marks and citations omitted)); Marullo v.

Colvin, No. 12CV871(MAT), 2014 WL 5465458, at *9 (W.D.N.Y. Oct. 28, 2014) (finding ALJ did not err in failing to explain why plaintiff's cerebral palsy was non-severe because "the medical record does not support a diagnosis of 'probable cerebral palsy,' resulting from a one-time examination"); Jordan v. Colvin, No. 5:10CV1197(DNH), 2013 WL 1666195, at *4 (N.D.N.Y. Apr. 17, 2013) ("Substantial evidence supports the ALJ's determination at Step 2, including not mentioning obesity and fibromyalgia[.]").

**B.  Step Three -- Listings 12.02, 12.06, 12.08 and 12.10**

At Step Three, the ALJ found that plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 15. Specifically, the ALJ decided that the severity of plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 and 12.06." Tr. 15.

Plaintiff argues that the ALJ erred at Step Three by failing to consider Listings 12.08 and 12.10, in light of the ALJ's finding that plaintiff "suffered from Asperger's syndrome." Doc. #17-1 at 9-10. Plaintiff also contends that the ALJ failed to adequately explain and cite evidence in support of his finding that plaintiff did not meet the paragraph B criteria

of Listings 12.02 or 12.06. See Doc. #17-1 at 11-19. Defendant argues that "the ALJ's step three determination is supported by substantial evidence." Doc. #22-1 at 6. Defendant contends that plaintiff fails to satisfy either the A or B criteria of Listing 12.08. See id. at 7-8. Defendant further argues that "the ALJ's failure to explicitly discuss Listing 12.10 was harmless[,]" because "the 'B' criteria were identical to the listings considered [12.02 and 12.06] and further, the ALJ found that Plaintiff had severe Asperger's Syndrome at step two and considered that impairment throughout the sequential analysis[.]" Id. at 8.

The Court turns first to plaintiff's argument that the ALJ's finding that plaintiff failed to meet the paragraph B criteria of Listings 12.02 or 12.06 was not supported by substantial evidence.

### 1. **Listings 12.02 and 12.06**

Listing 12.02 applies to "Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.02. To satisfy this listing, plaintiff's impairments must meet both the paragraph A

and B criteria, or the paragraph C criteria of that listing. <u>See</u> <u>id.</u> Because there is no error claimed with respect to the ALJ's paragraph A and C findings, the Court addresses only the requirements of paragraph B. Paragraph B requires a showing of at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]" <u>Id.</u>

Listing 12.06 applies to "Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.06. To satisfy this listing, plaintiff's impairments must meet the requirements of paragraphs A and B, or paragraphs B and C. <u>See</u> <u>id.</u> Again, because plaintiff claims no error with respect to the ALJ's paragraph A and C findings, the Court addresses only the requirements of paragraph B. Similar to the paragraph B requirements of Listing 12.02, the paragraph B requirements of Listing 12.06 requires a showing of at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social

functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." Id.

The ALJ determined that plaintiff had a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and that plaintiff had "experienced no episodes of decompensation." Tr. 16. Therefore, the ALJ determined that plaintiff failed to meet the paragraph B criteria of either Listing 12.02 or Listing 12.06. See id. at 17. The ALJ also considered the paragraph C criteria of Listings 12.02 and 12.06. See id. The ALJ concluded: "After a thorough review of the record, the undersigned finds that the record fails to suggest any basis for a conclusion that the requirements of Part C are met in this case." Id.

Plaintiff contends that the ALJ erred in determining that plaintiff did not meet the paragraph B criteria of either Listing 12.02 or Listing 12.06. See Doc. #17-1 at 11-19. Specifically, plaintiff argues that the ALJ's finding that plaintiff is not markedly limited in her activities of daily living, social functioning, or concentration, persistence, or pace is not supported by substantial evidence. See Doc. #17-1 at 11-19. Plaintiff does not argue that the ALJ erred in finding that plaintiff had not experienced episodes of decompensation or

that plaintiff did not meet the paragraph C criteria of each
listing.

The ALJ's finding that plaintiff failed to demonstrate a
marked restriction in activities of daily living is supported by
substantial evidence. The Regulations advise claimants that
"[a]ctivities of daily living include adaptive activities such
as cleaning, shopping, cooking, taking public transportation,
paying bills, maintaining a residence, caring appropriately for
your grooming and hygiene, using telephones and directories, and
using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1,
Listing 12.00(C)(1). Plaintiff testified at the hearing that she
dresses, grooms, and bathes herself, performs household chores,
microwaves food, and goes shopping. See Tr. 39-41, 48. Plaintiff
further testified that her driving has increased because her
"wife needs [plaintiff] to drive her around." Tr. 40. Plaintiff
stated on the Activities of Daily Living form that she manages
the bills, cleans dishes, does laundry, sweeps, takes out the
trash, drives, and goes shopping. See Tr. 210-14. Therefore, the
ALJ's determination that plaintiff was not markedly restricted
in her activities of daily living is supported by substantial
evidence. See Delvalle v. Colvin, No. 14CV1779(PAE)(JCF), 2015
WL 1381536, at *15 (S.D.N.Y. Mar. 25, 2015) (ALJ properly
determined plaintiff had mild restriction on activities of daily

living where she confirmed she could perform chores, cook, pay bills, and shop.).

Substantial evidence also supports the ALJ's determination that plaintiff did not have marked difficulties in social functioning. "Social functioning refers to [plaintiff's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00(C)(2). Plaintiff testified that she lives with her wife, to whom she has been married since 2006. See Tr. 34; see also Taylor v. Colvin, No. 6:12CV1389(GLS), 2013 WL 6181066, at *6 (N.D.N.Y. Nov. 22, 2013) (citing plaintiff's "good relationship with his spouse" as evidence that he "only suffered mild functional limitations[]"); Brayton v. Astrue, No. 1:08CV236(GLS)(VEB), 2009 WL 2971514, at *7 (N.D.N.Y. Sept. 11, 2009) (finding plaintiff's testimony that "she was married and lived with her husband" supported the "conclusion that Plaintiff suffered from only mild difficulties in maintaining social functioning[]"). Plaintiff indicated that she shops in stores. See Tr. 214. Plaintiff also wrote that she has "a couple of friends[.]" Tr. 571.

Dr. Hakim noted on January 1, 2014, that plaintiff was "[t]hinking of joining a card game 'magic[] the gathering' for socializing." Tr. 334. LMFT Dean wrote on May 13, 2015, that plaintiff "had been in contact with an old friend Matt and that they would be getting together to look at vocational options." Tr. 598. LMFT Dean also observed that plaintiff's "[r]elationship appears to be on track[.]" Tr. 600. The ALJ observed at the hearing that plaintiff was able to "testify on [her] own behalf and was observed to adhere to proper hearing decorum." Tr. 16. The ALJ's finding is also supported by the opinions of the State consultative professionals, who found that plaintiff had only moderate difficulties in social functioning. See Tr. 69, 82; see also Petrie v. Astrue, No. 08CV1289(GLS)(VEB), 2009 WL 6084277, at *8 (N.D.N.Y. Nov. 10, 2009) (finding the assessment of the "state review consultant supported the ALJ's findings[]" that plaintiff had "moderate difficulties as to social functioning"), report and recommendation adopted, 2010 WL 1063836 (Mar. 19, 2010), aff'd, 412 F. App'x 401 (2d Cir. 2011). Therefore, the ALJ's determination that plaintiff had only moderate difficulties in social functioning is supported by substantial evidence.

The ALJ's finding that plaintiff did not have marked difficulties with regard to concentration, persistence, and pace is also supported by substantial evidence. "Concentration,

persistence, or pace refers to the ability to sustain focused

attention and concentration sufficiently long to permit the

timely and appropriate completion of tasks commonly found in

work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing

12.00(C)(3). At the hearing, plaintiff testified that she "spent

nine months straight work with a big focus on doing math

problems[.]" Tr. 39 (sic). She further testified that she

"worked really, really hard[]" and "would spend anywhere from

three to -- upwards to three to five hours a day" on the math

problems. Id. Plaintiff testified that she has "coping

mechanisms" that help her concentrate, including setting agendas

"with to-do lists broken up into categories[.]" Tr. 43.

Plaintiff also testified that she drives, watches a television

show and "technical lectures[,]" reads "reference manuals" and

"[s]tuff online[,]" and that she had been "getting to know a

little bit more about how to do scripting for building tools in

Lender, which is a piece of 3D art software." Tr. 40; 44-45.

Plaintiff stated on the Activities of Daily Living form that she

does "math exercises," "creative projects," "various personal

activities," and "sometimes programming projects." Tr. 210; see

Simms v. Comm'r of Soc. Sec., No. 16CV534(DLI), 2017 WL 4286252,

at *8 (E.D.N.Y. Sept. 26, 2017) (Substantial evidence supported

"ALJ's finding that Plaintiff had no more than a mild limitation

to her concentration, persistence and pace[]" because "Plaintiff

testified that she tries to read every day, watches television, and drives her son to school, all of which require the ability to concentrate." (citations omitted)).

One medical opinion does support plaintiff's position. Dr. Hakim found that plaintiff had an obvious problem focusing long enough to finish assigned simple activities, and a very serious problem performing basic work activities at a reasonable pace, on a sustained basis, and finishing on time. See Tr. 342-343. However, she also determined that plaintiff's attention and concentration were "all intact[.]" Tr. 341. Moreover, the ALJ assigned "little weight to Dr. Hakim's opinion[.]" Tr. 20. As will be discussed herein, the ALJ's decision to assign Dr. Hakim's opinion little weight is supported by substantial evidence.

On June 12, 2014, LMFT Dean assessed plaintiff as being moderately limited in her ability to maintain concentration and to "work in proximity w/o distraction[.]" Tr. 347. Norwich Psychiatric Center progress notes from June 25, 2015; July 9, 2015; August 6, 2015; and September 3, 2015; indicate that plaintiff had fair concentration. See Tr. 572. Both State consultative professionals found that plaintiff had only moderate difficulties in maintaining "attention and concentration for extended periods[]" and was able "to perform at a consistent pace without an unreasonable number and length

of rest periods." Tr. 69, 81-82. Therefore, the ALJ's finding is supported by substantial evidence. See <u>Sweeney v. Colvin</u>, No. 3:13CV00703(SALM), 2015 WL 11237311, at *8 (D. Conn. Aug. 28, 2015) ("The state reviewing non-examiners each also found plaintiff to suffer only moderate difficulties in this area. Accordingly, substantial evidence supports a finding that plaintiff's concentration, persistence or pace were not impaired to a 'marked' degree, as that term is defined by the Listings." (citations omitted)), <u>report and recommendation adopted</u>, 2015 WL 5684024 (Sept. 28, 2015).

Accordingly, the ALJ's finding that plaintiff failed to meet the paragraph B criteria of either Listing 12.02 or Listing 12.06 is supported by substantial evidence. The Court therefore turns to plaintiff's argument that the ALJ erred by failing to consider Listings 12.08 and 12.10.

## 2. <u>Listings 12.08 and 12.10</u>

Listing 12.08 applies to "Personality Disorders: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.08. To satisfy this listing, plaintiff's

impairments must meet both the paragraph A and B criteria of that listing. See id. Because there is no error claimed with respect to the ALJ's paragraph A finding, the Court addresses only the requirements of paragraph B. Paragraph B requires a showing of at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]" Id.

Listing 12.10 applies to "Autistic disorder and other pervasive developmental disorders: Characterized by qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills, and in imaginative activity. Often, there is a markedly restricted repertoire of activities and interests, which frequently are stereotyped and repetitive." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.10. To satisfy this listing, plaintiff's impairments must meet both the paragraph A and B criteria of that listing. See id. Because there is no error claimed with respect to the ALJ's paragraph A finding, the Court addresses only the requirements of paragraph B. Paragraph B of Listing 12.10 sets forth the same requirements as those set forth in paragraph B of Listing 12.08. See id.

"For a claimant to show that [her] impairment matches a listing, it must meet <u>all</u> of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). Therefore, to show that her impairment(s) meet or equal either Listing 12.08 or Listing 12.10, plaintiff must demonstrate that her impairment meets both the paragraph A <u>and</u> paragraph B requirements of the listing. Each of the listings that <u>were</u> considered by the ALJ (Listings 12.02 and 12.06) has the same paragraph B criteria as the listings plaintiff argues <u>should</u> have been considered (Listings 12.08 and 12.10).

As described above, the ALJ's determination that plaintiff failed to meet the paragraph B criteria of either Listing 12.02 or Listing 12.06 is supported by substantial evidence. Although the ALJ did not explicitly discuss Listing 12.08 or Listing 12.10, "the absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments," if "portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." <u>Schweiker</u>, 675 F.2d at 468. Here, the ALJ determined that plaintiff's impairments failed to meet the paragraph B criteria required to meet either Listing 12.08 or Listing 12.10. <u>See</u> Tr. 15-17. That the ALJ reached this conclusion while discussing other listings does not alter the

fact that the conclusion was reached and clearly set forth in his decision. Cf. Major v. Astrue, No. 12CV304(WMS), 2013 WL 2296306, at *3 (W.D.N.Y. May 24, 2013) ("[A]lthough the ALJ referenced only Listings 12.04 and 12.06, which pertain to affective and anxiety related disorders respectively, the 'B' and 'C' criteria for all three listings are identical. Thus, the ALJ did evaluate Plaintiff's cognitive impairment in relation to Listing 12.02." (citations omitted)). Therefore, for the reasons described above, the ALJ's implicit finding that plaintiff failed to meet the paragraph B criteria of Listings 12.08 or 12.10 is supported by substantial evidence. See Schweiker, 675 F.2d at 469 (upholding the ALJ's implicit determination that plaintiff failed to meet a Listing because it was "supported by substantial evidence").

As a result, the ALJ did not err in failing to explicitly consider Listings 12.08 and 12.10. The ALJ assessed the paragraph B criteria for Listings 12.02 and 12.06, which are the same for Listings 12.08 and 12.10, and the ALJ's assessment of that criteria is supported by substantial evidence. See Rye v. Colvin, No. 2:14CV170(JMC), 2016 WL 632242, at *6 (D. Vt. Feb. 17, 2016) ("Because the ALJ assessed the paragraph B criteria for Listing 12.04, and that criteria is the same for Listing 12.08, and because the ALJ's assessment of that criteria is

supported by substantial evidence, the ALJ did not err in failing to explicitly consider Listing 12.08 at step three.").

### C. Assignment of Weight to Medical Opinions

Plaintiff contends that the ALJ "erred in his treatment of the opinion evidence[.]" Doc. #17-1 at 26. Specifically, plaintiff asserts that the ALJ erred in weighing the June 14, 2014, opinion of plaintiff's treating physician, Dr. Hakim,[5] the opinions of plaintiff's therapist LMFT Dean, and the opinions of the State consultative professionals. See id. at 28-36. Defendant argues that the "ALJ's evaluation of the opinion evidence was supported by substantial evidence." Doc. #22-1 at 15.

### 1.   Treating Physician Dr. Hakim

Dr. Hakim completed an assessment of plaintiff on June 6, 2014.[6] See Tr. 341-44. Dr. Hakim stated that plaintiff's orientation, memory, attention, and concentration were "all intact[.] However, in times of severe anxiety there would be impairment. With medications there is some improvement[.]" Tr. 341. She indicated that plaintiff had no problem taking care of

---

[5] Plaintiff makes no arguments pertaining to Dr. Hakim's August 4, 2014, opinion. See Tr. 428-35.

[6] Dr. Hakim's assessment appears again later in the record. See Tr. 354-57. The assessment appears to be the same other than an additional Dr. Hakim signature dated October 6, 2014. See Tr. 357.

personal hygiene, caring for physical needs, using good judgment regarding safety and dangerous circumstances, asking questions or requesting assistance, and respecting and responding appropriately to others in authority. See Tr. 342-43. She reported that plaintiff had a slight problem handling frustration appropriately. See Tr. 342.

Dr. Hakim opined that plaintiff had an obvious problem carrying out single-step instructions, carrying out multi-step instructions, focusing long enough to finish assigned simple activities or tasks, and changing from one simple task to another. See Tr. 343. She found that plaintiff had a very serious problem using appropriate coping skills to meet ordinary demands of a work environment, interacting appropriately with others in a work environment, getting along with others without distracting them or exhibiting behavioral extremes, performing basic work activities at a reasonable pace and finishing on time, and performing work activity on a sustained basis. See Tr. 342-343. She wrote that plaintiff "certainly suffers from severe social pragmatic communication disorder which renders [her] not able to hold a job[.]" Tr. 343. Finally, Dr. Hakim opined that plaintiff is "not able to be productive in a work environment[.]" Tr. 343.

A treating source's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in [the] case record[.]" 20
C.F.R. §404.1527(c)(2). If the treating physician's opinion is
not supported by objective medical evidence or is inconsistent
with other substantial evidence in the record, the ALJ need not
give the opinion controlling weight. See Poupore, 566 F.3d at
307. If a treating source's opinion is not given controlling
weight, "SSA regulations require the ALJ to consider several
factors in determining how much weight the opinion should
receive." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). "To
override the opinion of the treating physician, ... the ALJ must
explicitly consider, inter alia: (1) the frequency, length,
nature, and extent of treatment; (2) the amount of medical
evidence supporting the opinion; (3) the consistency of the
opinion with the remaining medical evidence; and, (4) whether
the physician is a specialist." Id. (citation omitted). "After
considering the above factors, the ALJ must comprehensively set
forth his reasons for the weight assigned to a treating
physician's opinion." Id. (internal quotation marks and citation
omitted). However, a "slavish recitation of each and every
factor" is unnecessary "where the ALJ's reasoning and adherence
to the regulation are clear." Atwater v. Astrue, 512 F. App'x
67, 70 (2d Cir. 2013).

The ALJ assigned "little weight to Dr. Hakim's opinion, as it is conclusory in nature, fails to give disabling limitations and is an assessment of the claimant's ability to engage in basic work like activities, which is an opinion reserved to the Commissioner." Tr. 20. The ALJ explained that he did not accept Dr. Hakim's conclusion that plaintiff "has a very serious problem using appropriate coping skills, as that does not contemplate the ability to perform work." Id.

The ALJ found that Dr. Hakim's conclusion that plaintiff "has obvious problems with carrying out single step tasks or performing basic work activities is not consistent with the notation that [plaintiff] had intact memory, attention and concentration and that [she] had some improvement with medications." Tr. 20. The ALJ further noted that "nothing in this assessment reflects the ongoing job search that Dr. Hakim detailed in her treatment notes[.]" Id. Therefore, the ALJ did not assign Dr. Hakim's opinion controlling weight, but stated: "Dr. Hakim's observations and findings are not ignored and have been carefully considered in providing insight as to functional ability and how they affect the [plaintiff's] ability to work[.]" Id.

The ALJ did not err by declining to assign Dr. Hakim's opinion controlling weight, for several reasons. Dr. Hakim provided her opinions on a standardized check-box form. See Tr.

342-43. Check-box forms "are considered only marginally useful for purposes of creating a meaningful and reviewable factual record. Such form reports provide little reason to afford much weight to a treating physician's opinion." Sabater v. Colvin, No. 12CV4594(KMK)(JCM), 2016 WL 1047080, at *5 n.6 (S.D.N.Y. Mar. 10, 2016) (quotation marks and citations omitted); see also Philpot v. Colvin, No. 12CV291(MAD)(VEB), 2014 WL 1312147, at *19 (N.D.N.Y. Mar. 31, 2014) (noting that the treating physician's "opinion was largely a 'checklist' form" and concluding that "[t]he ALJ acted within her discretion in discounting the opinion on this basis"); Cahill v. Astrue, No. 11CV148(JMC), 2012 WL 3777072, at *7 (D. Vt. Aug. 29, 2012) (ALJ properly afforded treating physician's opinion limited weight where "[a] majority of [the] recommendations were boxes checked on a form."); Mix v. Astrue, No. 09CV0016(MAT), 2010 WL 2545775, at *5 (W.D.N.Y. June 18, 2010) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." (quoting Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993))); Halloran v. Barnhart, 362 F.3d 28, 31 n.2 (2d Cir. 2004) ("The standardized form, evidently furnished by the New York State Office of Temporary and Disability Assistance, is only marginally useful for purposes of creating a meaningful and reviewable factual record.").

Dr. Hakim's opinions that plaintiff has "severe social pragmatic communication disorder which renders [her] not able to hold a job" and that plaintiff is "not able to be productive in a work environment" were not entitled to controlling weight. Tr. 343. Opinions that a plaintiff is disabled are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case[.]" 20 C.F.R. §404.1527(d)(1); see also Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) (The treating physician's "assessments of [plaintiff's] 'disability status' are not determinative because it is the responsibility of the Commissioner to make the ultimate decision as to whether the claimant has a 'disability' under the statute."); Snell v. Apfel, 177 F.3d 128, 133–34 (2d Cir. 1999) ("The final question of disability is ... expressly reserved to the Commissioner.").

Dr. Hakim's opinions are also internally inconsistent and inconsistent with other evidence in the record. The ALJ properly determined that Dr. Hakim's finding that plaintiff "has obvious problems with carrying out single step tasks or performing basic work activities is not consistent with the notation that [plaintiff] had intact memory, attention and concentration and that [she] had some improvement with medications." Tr. 20; see Micheli, 501 F. App'x at 28 (concluding "the ALJ properly

declined to afford controlling weight" to the treating physician's opinion because it was "internally inconsistent").

Likewise, Dr. Hakim's opinions that plaintiff had a very serious problem interacting with others in a work environment and getting along with others without distracting them or exhibiting behavioral extremes are inconsistent with her treatment notes, which indicate that plaintiff was looking for both paid and volunteer work and working with someone named Jennifer to find a job at the library. See Tr. 362. "Under Second Circuit law, an ALJ is not obligated to afford a treating physician's opinion controlling weight when the treating physician's opinion conflicts with her own treatment notes." Dieguez v. Berryhill, No. 15CV2282(ER)(PED), 2017 WL 3493255, at *4 (S.D.N.Y. Aug. 15, 2017); see also Cichoki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) ("Because [the treating physician's] medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight.").

These opinions are also inconsistent with each State consultative professional's determinations that plaintiff was not significantly limited in her ability to maintain socially appropriate behavior and only moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from

supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. See Tr. 69-70, 82. "[T]he opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32; see also Ramos v. Berryhill, No. 3:15CV1368(MPS), 2017 WL 838091, at *6 (D. Conn. Mar. 3, 2017) ("[T]he ALJ's decision not to give controlling weight to [the treating physician's] opinions was supported by substantial evidence, because [the treating physician's] opinion was not consistent with the opinions of other medical experts." (quotation marks and citations omitted)).

Finally, while Dr. Hakim opined that plaintiff had an obvious problem focusing long enough to finish assigned simple activities, an obvious problem carrying out single step instructions, and a very serious problem performing work activity on a sustained basis, other evidence contradicts this. Plaintiff testified at the hearing that she worked on math problems for "three to five hours a day" for "nine months straight[,]" completing "tens of thousands[]" of math exercises. Tr. 39-40. She further testified that she watches technical lectures, see Tr. 44, reads reference manuals, see Tr. 45, and learns to script tools for 3D software, see id. On the

Activities of Daily Living form, plaintiff wrote that she does "math exercises," "creative projects," "various personal activities," and "sometimes programming projects." Tr. 210.

On June 12, 2014, LMFT Dean assessed plaintiff as being only moderately limited in her ability to maintain concentration and to "work in proximity w/o distraction[.]" Tr. 347. Norwich Psychiatric Center progress notes indicate that plaintiff had fair concentration. See Tr. 572. Each State consultative professional found that plaintiff had only moderate difficulties in "maintaining attention and concentration for extended periods[]" and was moderately limited in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 69, 81–82.

Plaintiff also contends that the ALJ erred by rejecting Dr. Hakim's opinion that plaintiff has a very serious problem using appropriate coping skills to meet the ordinary demands of a work environment, arguing that the "ability to use coping skills is, in fact, something that is necessary in a work environment." Doc. #17-1 at 32. Plaintiff does not cite to any law in support of her argument, and she fails to explain how this alleged error impacted the RFC. Furthermore, Dr. Hakim's opinion is inconsistent with plaintiff's testimony that she has "coping mechanisms" that help her concentrate, including setting agendas "with to-do lists broken up into categories[.]" Tr. 43.

Additionally, each State consultative professional determined that plaintiff had only moderate difficulties in her "ability to respond appropriately to changes in a work setting." Tr. 70, 82.

Accordingly, the ALJ properly declined to afford Dr. Hakim's opinion controlling weight. See Roma v. Astrue, 468 F. App'x 16, 19 (2d Cir. 2012) (ALJ properly declined to accord controlling weight to treating physician's opinion where it "conflicted with [the plaintiff's] own testimony that he could perform a reasonably broad range of light, non-stressful activities at or near his home, including driving, reading, sending email, and independently performing the activities of daily living while his wife worked full-time[.]"); Kennedy v. Astrue, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity"; explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts); Halloran, 362 F.3d at 32 ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002))).

Finally, plaintiff argues that the ALJ erred by failing to consider all of the factors required by the Regulations. See Doc. #17-1 at 30. Although the ALJ did not explicitly recite all of the required factors while explaining his assignment of weight to Dr. Hakim's opinion, the record indicates that the ALJ gave proper consideration to the factors. See Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) (finding that "the ALJ gave proper consideration to all relevant factors pursuant to applicable regulations[,]" despite the failure to expressly discuss one of the factors). The ALJ explicitly "considered opinion evidence in accordance with the requirements of 20 [C.F.R] [§]404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p[.]" Tr. 17. This is sufficient. See Dailey v. Comm'r of Soc. Sec., No. 5:14CV1518(GTS)(WBC), 2016 WL 922261, at *7 n.4 (N.D.N.Y. Feb. 18, 2016) (holding that "ALJ's 'reasoning and adherence' to the Regulations was clear" where "the ALJ specifically listed the 'treating physician' Regulation in her decision"), report and recommendation adopted sub nom. Dailey v. Colvin, 2016 WL 917941 (Mar. 10, 2016).

The ALJ implicitly acknowledged the frequency, length, nature, and extent of Dr. Hakim's treatment of plaintiff by citing to Dr. Hakim's treatment records. See Tr. 19-20. Again, this is sufficient. See Malave v. Berryhill, No. 3:16CV00661(SALM), 2017 WL 1080911, at *8 (D. Conn. Mar. 22,

2017) (determining that "the ALJ implicitly considered the nature and length" of a treating relationship because he considered "treatment notes throughout his decision[]"); Ramos v. Comm'r of Soc. Sec., No. 13CV6561(AJN), 2015 WL 708546, at *18 (S.D.N.Y. Feb. 4, 2015) ("The ALJ implicitly acknowledged the length of the treatment relationship, and the nature and extent of that relationship[.]").

The ALJ did not expressly discuss Dr. Hakim's psychiatry specialty, but it is clear that he understood Dr. Hakim to be plaintiff's treating psychiatrist. The ALJ discussed Dr. Hakim's psychiatric treatment and evaluation of plaintiff, see Tr. 19-20, citing to records that disclose Dr. Hakim's specialty, which indicates that he was aware of that specialty. See Jones v. Colvin, No. 6:16CV443(CFH), 2017 WL 758511, at *5 (N.D.N.Y. Feb. 27, 2017) (finding that the ALJ's reference to records indicating the treating physician's specialty "reflects the ALJ's acknowledgment of [the physician's] apparent specialty"); Plumley v. Comm'r of Soc. Sec., No. 5:15CV1229(GTS)(WBC), 2016 WL 7644866, at *6 (N.D.N.Y. Dec. 8, 2016) (finding ALJ adhered to the regulations despite failing to specifically mention the treating physician's specialty because the ALJ discussed the physician's "opinion and treatment notations"), report and recommendation adopted sub nom. Plumley v. Colvin, 2017 WL 44842 (Jan. 4, 2017); Camille v. Colvin, 104 F. Supp. 3d 329, 342-43

(W.D.N.Y. 2015)(finding ALJ did not err by failing to explicitly discuss the treating psychiatrist's specialty where the ALJ referenced the psychiatrist in connection with his psychiatric treatment of plaintiff), aff'd, 652 F. App'x 25 (2d Cir. 2016); Petrie, 412 F. App'x at 407-08 (deciding that it was clear from the record that the ALJ considered the physicians' specialties because he treated their assessments as "medical opinions of record").

Accordingly, the ALJ did not err in his application of the treating physician rule to Dr. Hakim's opinion.

### 2.    Treating Source Opinion -- LMFT Dean

Plaintiff next argues that the ALJ failed to properly weigh the opinions of plaintiff's therapist LMFT Dean. See Doc. #17-1 at 34-36. LMFT Dean is not considered a treating source whose opinion is entitled to controlling weight. Only "acceptable medical sources" are considered treating sources whose opinions are entitled to controlling weight. See 20 C.F.R. §404.1527(a)(2); Rivera v. Colvin, No. 15CV6048(CJS), 2016 WL 5858931, at *2 n.2 (W.D.N.Y. Oct. 7, 2016) ("[A] 'LMFT' (Licensed Marriage and Family Therapist) is not an 'acceptable medical source,' but may be considered as an 'other source' under the regulations."); Griffin v. Colvin, No. 3:15CV105(JGM), 2016 WL 912164, at *14 (D. Conn. Mar. 7, 2016) ("[A] licensed marriage and family therapist, is not an 'acceptable medical

source' whose medical opinion can be afforded controlling weight."); <u>Kinsey v. Colvin</u>, No. 13CV6124(FPG), 2014 WL 5039673, at *20 (W.D.N.Y. Oct. 8, 2014) (stating that an LMFT "was not an 'acceptable medical source'").

Though not entitled to controlling weight, opinions from "other sources" are still considered when making "a determination or decision about whether the individual is disabled." SSR 06-03P, 2006 WL 2329939, at *4 (S.S.A. Aug. 9, 2006). "Opinions from 'other medical sources' may reflect the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." <u>Id.</u> at *5.

When weighing any treating source's opinion, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. <u>See</u> 20 C.F.R. §404.1527(c)(2)-(5); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4. However,

> [n]ot every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

Id. at *5.

On June 12, 2014, LMFT Dean drafted a letter ("June 12, 2014, Letter") evaluating plaintiff's limitations. See Tr. 345. He stated that "due to the significance of [plaintiff's] anxiety and lack of social awareness," she would "not be able to maintain employment at this time." Tr. 345. LMFT Dean described plaintiff's social awareness and abilities:

> Client anxiety has become debilitating as [she] is constantly questioning [her] ability to interact appropriately with others.
> Client unable to process non verbal cues - problems noted in facial communication, body communication, pitch, intonation, rate of speech, inflection, attack. Client is aware of volume.
> Client aware of idioms and analogy[.]
> Client has difficulty with understanding reciprocity (ToM). [She] has difficulty in understanding impact of [her] actions on others and major difficulty predicting reactions of others.
> Client utilizes ill fitting physical tics and physical gestures while in conversation which would be distracting at best but probably cause nervousness in others in observing these gestures[.]
> Client has difficulty entering into conversation and in being interrupted while in conversation. Client becomes distracted and upset when cut off in general conversation.
> Client eye contact is distracting and rarely appropriate - fixed gaze or no contact at all.

> Client having difficulty in interview skills i.e.
> will make inappropriate comments in interview or self
> sabotage while in interview[.]

Tr. 346. LMFT Dean also described plaintiff's "Perseverate patterns[:]" "Client has difficulty in monitoring and filtering perseverative thoughts. [Plaintiff] gets caught in the need to question and have information complete. Client will focus on erroneous information. Client will perseverate on self soothing topics to reduce anxiety." Id.

LMFT Dean opined that plaintiff "attempts to organize [her] daily activities through ill fitting method which cannot be challenged at this time." Tr. 346 (sic). LMFT Dean stated that plaintiff is "unable to be motivated or persuaded to break [her] rigid thoughts regarding [her] schedule or shift into other areas of vocation." Id. He further stated that plaintiff "reacts to adverse topics or comments with inappropriate aggressive reactions[.]" Id. LMFT Dean wrote that plaintiff's "anxiety appears to be fixed at high due to cognitive processes, as [she] does not want to make mistakes and has difficulty in ascertaining the social awareness outside of direct verbal/written communication." Tr. 347. He further wrote that plaintiff "has moderate difficulty in maintaining focus during conversation." Id.

LMFT Dean determined that plaintiff was not significantly limited in her ability to carry out very short instructions. See

Tr. 346. LMFT Dean indicated that he had "no evidence" regarding plaintiff's ability to "[p]erform activities/punctuality." He wrote "no evidence - strength" in reference to plaintiff's ability to "sustain ordinary routine[.]" Tr. 347. He wrote that plaintiff was moderately limited in her abilities to carry out detailed instructions, maintain concentration for extended periods, work in proximity to others without distraction, be aware of hazards and precautions, and set independent goals. See id. He found plaintiff was markedly limited in her ability to complete a normal work week without interruption, interact with the public, ask simple questions, accept instruction and criticism, get along with coworkers, maintain socially appropriate behavior, and respond appropriately to change. See id. LMFT Dean opined that plaintiff is "unable to be employed in [her] chosen field due to [her] inability to understand the social world[,]" so he recommended that plaintiff "[e]xplore other areas of vocation where [she] will not be challenged and assisted in this area of disability." Id. Finally, LMFT Dean described plaintiff as "a very intelligent individual[.]" Tr. 348.

The ALJ assigned partial weight to the June 12, 2014, Letter. See Tr. 20. The ALJ wrote that he "accepts that the claimant can carry out short instructions and can perform activities with punctuality" and that plaintiff "has significant

social interaction limitations and cannot respond to changes
well." Id. The ALJ incorporated these findings into his RFC. See
id. However, the ALJ explained that LMFT Dean's statement that
plaintiff "would not be able to maintain work is an issue
reserved to the Commissioner, and not within the definition of
an opinion for SSA purposes." Id.

Plaintiff argues that the "ALJ's statement that he has
incorporated deficits in social interaction and response to
changes into his RFC eludes the question of whether or not he is
accepting or rejecting Dean's opinion that the claimant is
markedly impaired in these areas." Doc. #17-1 at 34. However,
after assigning "partial weight" to the June 12, 2014, Letter,
the ALJ explicitly explained that he "accepts that the claimant
has significant social interaction limitations and cannot
respond to changes well." Tr. 20. This is sufficient. Cf.
Emanuel v. Berryhill, No. 16CV5873(JLC), 2017 WL 5990128, at *14
(S.D.N.Y. Dec. 4, 2017) ("[T]he law of this Circuit is that an
ALJ is not required to discuss, or even mention, every piece of
evidence in the record and its relative persuasiveness.");
Cichocki, 729 F.3d at 178 n.3 ("An ALJ need not recite every
piece of evidence that contributed to the decision, so long as
the record permits us to glean the rationale of an ALJ's
decision[.]" (quotation marks and citations omitted)).

Plaintiff also contends that the ALJ erred by "accept[ing] Dean's opinion that the claimant can carry out short instructions and can perform activities with punctuality[,]" because "Mr. Dean stated that he had 'no evidence' regarding the claimant's limitations in this regard." Doc. #17-1 at 34. However, LMFT Dean did not state that he had no evidence regarding plaintiff's ability to carry out short instructions; rather, LMFT Dean wrote that plaintiff was "not significantly limited" in that regard. Tr. 347. As to punctuality, LMFT Dean indicated that he had "no evidence" regarding plaintiff's ability to "[p]erform activities/punctuality[.]" Tr. 347.

It is not clear why the ALJ concluded that the June 12, 2014, Letter indicates that plaintiff "can perform activities with punctuality." Tr. 20. Nevertheless, plaintiff fails to cite any evidence indicating that plaintiff is limited in her ability to perform activities with punctuality, and she does not argue that this alleged mischaracterization impacted the ALJ's RFC. See Durante v. Colvin, No. 3:13CV1298(JCH)(HBF), 2014 WL 4852881, at *23 (D. Conn. Aug. 7, 2014)(finding that plaintiff failed to meet her burden of demonstrating that the ALJ's misstatement of a treating physician's opinion was prejudicial), report and recommendation adopted, 2014 WL 4843684 (Sept. 29, 2014). In fact, LMFT Dean wrote on June 12, 2015, that plaintiff "has been compliant with scheduling and arriving at [her]

appointments to date." Tr. 486. Therefore, any error committed by the ALJ in finding that that the June 12, 2014, Letter indicated that plaintiff could perform activities with punctuality was harmless. See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." (citations omitted)).

Internal inconsistencies in the June 12, 2014, Letter further support the ALJ's decision to afford it only partial weight. See Fiodalisa Vargas Dicupe v. Comm'r of Soc. Sec., No. 1:16CV00903(MAT), 2018 WL 3322765, at *4 (W.D.N.Y. July 6, 2018) (finding "internal inconsistencies adequately support the ALJ's" decision to assign "little weight" to an "other source opinion[]"). LMFT Dean's opinion that plaintiff would "not be able to maintain employment at this time[]" is inconsistent with his statement that plaintiff is "unable to be gainfully employed in [her] chosen field due to [her] inability to understand the social world[]" and his recommendation that plaintiff "[e]xplore other areas of vocation where [she] will not be challenged in this area of disability." Tr. 347 (emphasis added). These statements suggest that LMFT Dean believed plaintiff might be able to find employment in a different field.

LMFT Dean wrote a second letter on June 12, 2015 ("June 12, 2015, Letter"). See Tr. 486. He wrote that plaintiff "has been compliant with scheduling and arriving at [her] appointments to date." Id. He further wrote that plaintiff "has also been discharged from BRS as the employment evaluator found that [her] rigid thinking and social unawareness and inappropriateness are too debilitating to continue services with this program. It appears that [plaintiff] is too disabled to receive vocational training from the State of Connecticut at this time." Tr. 486. LMFT Dean opined that plaintiff has the following significant problems:

> 1. Executive Functioning: Problems in organizing and maintaining daily tasks at home, difficulty understanding abstract ideas or objectives, problems with empathy, inability to read non verbal communications, rigid thinking and adherence to rules, problems noted in conversation – language/gestures/tone/eye contact/rhythm/pitch/idioms, inability to shift without fully working out a topic[.]
> 2. Rate of processing: inability to incorporate (within normal expectations) ideas, concepts or interventions. [Plaintiff] needs excessive time to work out the details to process recommendations into action. Misperception of social situations.
> 3. Anxiety: fear of authorities and being shunned or banished, social anxiety.
> 4. ADHD: inability to concentrate without many breaks in non preferred tasks.

Tr. 486-487. LMFT Dean further stated:

> During the last 12 months it was recommended that [plaintiff] enroll in a partial hospitalization program or intensive outpatient program located at Backus Hospital, L&M hospital or Natchaug hospital to help integrate [her] into becoming more flexible and less

anxious when in the general public. All hospitals
interviewed [plaintiff] and recommended that [she] look
elsewhere as [she] did not fill the profile of those
they would enroll in their programs. It was not that
[her] symptomology was not evident. It was that they
felt [she] would be a distraction to other group members
and not a good fit for their groups.

Tr. 487. LMFT Dean opined that "due to the significance of

[plaintiff's] anxiety and lack of social awareness," she "will

not be able to maintain employment at this time." Tr. 487. He

further stated that it would "likely take more than 12 months to

help [plaintiff] with [her] social deficits and anxiety to get

[her] to the point where [she] would be able to acquire and

maintain employment[,]" but "it may be that [she] will never

find gainful employment." Id.

The ALJ assigned the June 12, 2015, Letter little weight.

See Tr. 21. He explained that LMFT Dean's opinion that plaintiff

"cannot work is not a medical opinion, but rather is an issue

reserved to the Commissioner." Tr. 21. The ALJ noted that "there

is nothing in the contemporaneous treatment notes that detail

references to participating in an intensive outpatient program."[7]

Id. Finally, the ALJ observed that the letter failed to "note

---

[7] In passing, plaintiff contends that the intensive outpatient
programs "are mentioned." See Doc. #17-1 at 35. Plaintiff makes
no argument as to the relevance of this alleged error.
Therefore, plaintiff fails to meet her burden of establishing
that any such error was prejudicial. Cf. Durante, 2014 WL
4852881, at *23.

that the claimant was also seeking employment during this period, whereas the actual treatment records identify the claimant's job search[.]" Id.

The June 12, 2015, Letter is inconsistent with LMFT Dean's treatment notes. LMFT Dean opined that plaintiff would "not be able to maintain employment at this time[,]" but his treatment notes suggest that plaintiff was capable of finding employment. On May 28, 2014, LMFT Dean noted that plaintiff "[s]tated that [she] didn't feel disabled as [she] had maintained employment since [she] was able to in the past." Tr. 594. On July 23, 2014, LMFT Dean wrote that he and plaintiff "[d]iscussed taking on any job at this time[,]" but plaintiff stated that she "would be too anxious to break into a new career." Tr. 595. On May 13, 2015, LMFT Dean wrote that plaintiff "had been in contact with an old friend Matt and that they would be getting together to look at vocational options. Client has been continuing [her] search for employment[.]" Tr. 598. On May 27, 2015, LMFT Dean stated that plaintiff "was working on attending other groups [she] found on the Web[]" and he encouraged her to continue her "social and vocational[]" efforts. Tr. 598.

LMFT Dean's notes are also inconsistent with his opinions in the June 12, 2015, Letter regarding plaintiff's "[p]roblems in organizing and maintaining daily tasks at home" and "inability to concentrate[.]" Tr. 486-87. On April 1, 2015, he

noted that plaintiff stated that she "is doing well at home[,]"
that her "new schedule [was] working out well[,]" and that she
was "[d]eveloping new software and maintaining routines." Tr.
597. These inconsistencies support the ALJ's decision to accord
the June 12, 2015, Letter little weight. See Boland v. Comm'r of
Soc. Sec., No. 1:15CV1391(GTS), 2017 WL 1532584, at *6 (N.D.N.Y.
Apr. 27, 2017) ("When weighing opinions from 'other sources' who
are not medically acceptable sources under the regulations, the
ALJ is instructed to consider numerous factors similar to those
used for assessing opinions from medically acceptable sources,
including ... the consistency of the opinion with the evidence
in the record as a whole." (citations omitted)); Blasco v. Comm'r
of Soc. Sec., No. 5:13CV576(GLS), 2014 WL 3778997, at *5 n.9
(N.D.N.Y. July 31, 2014) ("[T]he ALJ's explanation that the
restrictive opinion is inconsistent both internally, and with
the other evidence of record, is a sufficient basis for
discounting the opinion of an 'other source' as well as well as
that of an 'acceptable medical source.'" (citations omitted));
Williams v. Astrue, No. 6:05CV1297(NAM)(GJD), 2008 WL 4518994,
at *7 (N.D.N.Y. Sept. 30, 2008) (finding the ALJ correctly
assigned limited weight to treating source's opinions because
they were "not from an acceptable medical source" and were
"inconsistent with [the source's] own treatment records[]").

The June 12, 2015, Letter is also inconsistent with other evidence in the record. Each State consultative professional found that plaintiff was only moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain attention and concentration for extended periods, and perform at a consistent pace without an unreasonable amount of rest periods. See Tr. 69, 82. The consultative professionals also determined that plaintiff was not significantly limited in her ability to maintain socially appropriate behavior. See 70, 82; see also Mitchell v. Astrue, No. 3:10CV902(CSH), 2011 WL 9557276, at *15 n.22 (D. Conn. May 24, 2011), ("[T]he opinions of non-examining sources can override the treating sources' opinions provided they are supported by evidence in the record."), report and recommendation adopted, 2012 WL 6155797 (Dec. 11, 2012).

Norwich Psychiatric Center records indicate that plaintiff had fair concentration, memory, judgment, and insight. See Tr. 572. Additionally, plaintiff's hearing testimony that she works on math problems, see Tr. 39, watches technical lectures, see Tr. 44, reads reference manuals, see Tr. 45, and learns to

script tools for 3D software, see id., indicates that she can concentrate and process complex ideas and concepts.

The ALJ properly found that LMFT Dean's opinion that plaintiff would not be able to maintain work, expressed in both the June 12, 2014, Letter and the June 12, 2015, Letter, is an issue reserved to the Commissioner. See 20 C.F.R. §404.1527(d)(1); Micheli, 501 F. App'x at 28; Snell, 177 F.3d at 133-34.

Finally, plaintiff's contention that the ALJ erred by failing to "consider all six factors" required by the Regulations in his evaluation of LMFT Dean's opinions is without merit. Doc. #17-1 at 34. As previously noted, a "slavish recitation of each and every factor" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear." Atwater, 512 F. App'x at 70. Here, the ALJ sufficiently discussed the regulations and explained his reasoning. He discussed the length and nature of LMFT Dean's treatment relationship with plaintiff, stating that "Mr. Dean started treating the claimant for Asperger's Disorder, generalized anxiety disorder and ADHD in an outpatient setting in January 2014." Tr. 20. The ALJ also implicitly considered the frequency of the treatment relationship by citing to LMFT Dean's June 12, 2015, Letter, which states he treated plaintiff "on a weekly basis[.]" Tr. 486; see Malave, 2017 WL 1080911, at *8; Ramos,

2015 WL 708546, at *18. Therefore, the ALJ sufficiently considered the factors relevant to his determination. See Cichocki, 534 F. App'x at 76.

Accordingly, the ALJ's weighing of LMFT Dean's opinions complied with the Regulations and was supported by substantial evidence.

### 3. State Consultative Professionals

Two consultative professionals reviewed plaintiff's case. Katrin Carlson, PsyD ("Dr. Carlson"), reviewed plaintiff's "medical and other information and work experience" and assessed plaintiff's RFC on July 29, 2014. Tr. 67. On reconsideration, Robert Decarli, PsyD ("Dr. Decarli"), again reviewed plaintiff's "medical and other information and work experience" and assessed plaintiff's RFC on October 10, 2014. Tr. 80.

Each consultative professional found that plaintiff was only moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain attention and concentration for extended periods, and perform at a consistent pace without an unreasonable amount of rest periods. See Tr. 69, 82. The consultative professionals also determined that plaintiff was not significantly limited in her ability to maintain socially

appropriate behavior. <u>See</u> 70, 82. Each consultative professional opined that plaintiff is able to carry out routine, repetitive tasks for two hour periods across an eight hour day, "is suited to working autonomously in non-public settings, where interactions with coworkers/supervisors are infrequent[,]" and "is able to respond to simple but not detailed changes." Tr. 69-70; 81-82.

The ALJ determined that the opinions of the State consultative professionals are entitled to substantial weight:

> In accordance with Social Security Ruling 96-6p, the undersigned has considered the administrative findings of fact made by the state agency physicians (Exs. 1A and 3A). While the undersigned is mindful that these opinions are from non-examining and non-treating expert sources, they are not inconsistent with the medical evidence as a whole, and are therefore accorded substantial weight in determining the claimant's residual functional capacity identified above. Specifically, the undersigned accepts that the claimant can perform short and simple tasks and that [she] can sustain concentration, persistence and pace for such tasks. The undersigned also accepts that the claimant requires a work environment with non-public interaction and infrequent contact with co-workers and supervisors.

Tr. 21.

Plaintiff argues that the ALJ erred by affording substantial weight to the State consultative professionals' opinions because each consultative professional rejected plaintiff's ADHD diagnosis, while Dr. Decarli also rejected plaintiff's autism diagnosis. <u>See</u> Doc. #17-1 at 28. Plaintiff also contends that the ALJ erred because the State consultative

professionals did not have access to all of plaintiff's medical records when forming their opinions. See id. at 28-29. Defendant argues that the fact that "the ALJ and State agency review psychologists differed on Plaintiff's severe impairments is not a basis for rejecting the opinions" and that the "ALJ is not asked to consider whether Drs. Decarli and Carlson had reviewed the entire record." Doc. #22-1 at 16-17.

"It is well-established that state agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act, and that their opinions can constitute substantial evidence." (quotation marks and citation omitted); see also Atwater v. Astrue, No. 10CV420(WMS), 2012 WL 28265, at *4 (W.D.N.Y. Jan. 5, 2012) ("ALJs are entitled to rely upon the opinions of state agency medical consultants, as they are qualified experts in the field of Social Security disability."), aff'd, 512 F. App'x 67 (2d Cir. 2013). "[T]he opinions of non-examining sources can override the treating sources' opinions provided they are supported by evidence in the record." Mitchell, 2011 WL 9557276, at *15 n.22.

The ALJ's determination that plaintiff had additional impairments beyond those found by the State consultative professionals does not undermine his reliance on their opinions. "ALJs are entitled to accept certain portions of medical

opinions while rejecting others." Savage v. Comm'r of Soc. Sec.,
No. 2:13CV85(JMC), 2014 WL 690250, at *7 (D. Vt. Feb. 24, 2014)
(citing Veino, 312 F.3d at 588). The ALJ expressly stated that
he accepted the State consultative professionals' opinions
regarding plaintiff's limitations and abilities, including her
ability to "perform short and simple tasks" and to "sustain
concentration, persistence and pace for such tasks[.]" Tr. 21.
The ALJ did not err by affording substantial weight to those
opinions. See Johnson v. Berryhill, No. 2:16CV58(CR), 2017 WL
2671076, at *13 (D. Vt. June 21, 2017) (finding a disagreement
between the ALJ and the State consultative professionals
regarding whether impairments were severe "does not undermine
the propriety of [the ALJ's] reliance on [their] opinions[]").

Plaintiff's argument that the ALJ erred by assigning
substantial weight to the opinions of the State consultative
professionals, despite the fact that they did not have access to
all of plaintiff's medical records, fails for multiple reasons.
See Doc. #17-1 at 28-29. The Regulations state that the degree
to which a State consultative professional considers all of the
pertinent evidence in a claim affects the supportability and
weight of the professional's opinion. See 20 C.F.R.
§404.1527(c)(3); §404.1513a(b)(1). "However, there is no legal
requirement that opinion sources must have access to a full and
complete record in order for their opinions to be sufficient to

constitute substantial evidence." Genito v. Comm'r of Soc. Sec., No. 7:16CV0143(GTS), 2017 WL 1318002, at *9 (N.D.N.Y. Apr. 7, 2017).

The State consultative professionals' opinions are consistent with other evidence in the record. As discussed throughout this decision, plaintiff's hearing testimony regarding learning to script software tools, completing math lessons, reading reference manuals, and watching technical lectures supports the State consultative professionals' findings that plaintiff was only moderately limited in her ability to concentrate. See Tr. 39, 44-45. Plaintiff's testimony that she dresses, grooms, and bathes herself, performs household chores, microwaves food, drives, and goes shopping demonstrates that she is capable of carrying out routine and repetitive tasks. See Tr. 39-41, 48. Plaintiff also indicated on the Activities of Daily Living form that she manages the bills, cleans dishes, does laundry, sweeps, takes out the trash, drives, and goes shopping. See Tr. 210-14.

The medical records also provide support for the State consultative professionals' opinions. Dr. Hakim found that plaintiff's "orientation, memory, attention and concentration" were "all intact[.]" Tr. 341. LMFT Dean assessed plaintiff as being moderately limited in her ability to maintain concentration and to "work in proximity w/o distraction[.]" Tr.

347. Norwich Psychiatric Center notes consistently assessed plaintiff as having fair concentration. See Tr. 572. This consistent evidence supports the ALJ's decision to afford the opinions substantial weight. See Kowalski v. Colvin, No. 3:15CV01699(VLB), 2017 WL 838651, at *12 (D. Conn. Mar. 3, 2017) (rejecting argument that the ALJ erred by assigning great weight to the opinion of a State consultative professional who only reviewed a portion of plaintiff's medical records because of its "consistency with the medical record and the expertise of state agency medical consultants"); Lofton v. Colvin, No. 3:13CV528(JGM)(JBA), 2015 WL 2367692, at *25 (D. Conn. May 13, 2015) (finding the opinions of State consultative professionals that did not review the full medical record were "supported by evidence in the record[;]" therefore, "the ALJ did not err by affording these opinions substantial weight over the opinion of the treating physician"); cf. Rivera v. Colvin, No. 15CV3857(AJP), 2015 WL 9591539, at *16 (S.D.N.Y. Dec. 18, 2015) (finding the ALJ did not err by assigning significant weight to the opinion of a consultative psychiatrist who did not have access to the full medical record because his opinion "was more consistent with the record as a whole than" the treating physician's opinion).

Plaintiff does not allege that the State consultative professionals' RFC opinions would have been altered if they had

the opportunity to review additional evidence. Therefore, plaintiff fails to demonstrate that the ALJ erred by affording substantial weight to their opinions. See Hansen-Nilsen v. Comm'r of Soc. Sec., No. 5:15CV1258(GTS)(WBC), 2017 WL 913933, at *6 (N.D.N.Y. Feb. 7, 2017)("The ALJ did not commit error in relying on an opinion from a source who did not review the entire record because Plaintiff failed to provide evidence from the record which would contradict the opinion."), report and recommendation adopted, 2017 WL 913639 (Mar. 6, 2017); Lofton, 2015 WL 2367692 at *25 (finding "there was no harm caused by the ALJ relying on" State consultative professionals' opinions where plaintiff "failed to demonstrate how the RFC determined by the DDS physicians would have been altered if they had been provided with ... the remainder of the record[]").

The Court further notes that the ALJ reviewed the full medical record and assessed greater limitations than those opined by the State consultative professionals, including limiting plaintiff to work with no interaction with the public, no independent judgment making, and little to no changes in work duties or routines. See Tr. 17. "Therefore, there was no harm caused by the ALJ relying on these opinions." Lofton, 2015 WL 2367692 at *25 (finding no harm was caused by the ALJ's reliance on State consultative professionals' opinions because the ALJ considered and accounted for medical records "after the non-

examining doctors had submitted their reports" in his RFC); cf.
Rivera, 2015 WL 9591539 at *16 (finding ALJ did not err by
assigning significant weight to the opinion of a consultative
psychiatrist who did not have access to plaintiff's 2011 and
2012 medical records because the ALJ reviewed the complete
medical record and "acted within his discretion in determining
which parts of the various treating and non-treating physician's
opinions to credit[]"); Shorter v. Comm'r of Soc. Sec., No.
5:12CV1502(NAM)(ATB), 2014 WL 1280459, at *10 (N.D.N.Y. Mar. 27,
2014) (finding any error in ALJ's consideration of a State
consultative professional's report was harmless because "other
substantial evidence in the record" supported ALJ's RFC, which
was more restrictive than the consultative professional's
assessment).

Accordingly, the ALJ did not err by affording these
opinions substantial weight.

### D. Credibility

Plaintiff argues that the ALJ erred in his assessment of
the credibility of plaintiff's statements regarding her
symptoms. See Doc. #17-1 at 22-26. Defendant argues that the ALJ
"adequately explained his credibility assessment[]" and
"reasonably concluded that the evidence of record did not
substantiate Plaintiff's allegations to the disabling extent
alleged." Doc. #22-1 at 14.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted). The Regulations set forth a two-step process that an ALJ must follow in evaluating plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §404.1529(b). Second, the ALJ must assess the credibility of the plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §404.1529(c). The ALJ should consider factors relevant to plaintiff's symptoms, such as pain, including: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication" taken by claimant to alleviate the pain; (5) "treatment, other than medication," that plaintiff has received for relief of pain or other symptoms; (6) any other measures plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's

"functional limitations and restrictions due to pain or other symptoms." Id. The ALJ must consider all evidence in the case record. See SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The credibility finding "must contain specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4.

Here, the ALJ found that plaintiff's "medically determinable impairments could have reasonably been expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 18. He discussed plaintiff's daily activities, the duration and intensity of plaintiff's symptoms, the effectiveness of plaintiff's medications, and plaintiff's treatment records. See Tr. 18-19. This assessment was sufficient to satisfy the Regulations. See Martin v. Astrue, 337 F. App'x 87, 90 (2d Cir. 2009) (affirming credibility determination where ALJ explicitly considered three of the seven factors).

Substantial evidence supports the ALJ's determination that plaintiff's testimony regarding problems maintaining focus for work tasks was not entirely consistent with the evidence in the record. APNP Martin indicated that plaintiff's insight and judgment were intact, see Tr. 410, 416, 441, 448, 575, 582, and that plaintiff had a normal rate of thoughts and logical thought content, see Tr. 410, 416, 458, 575. She also noted that plaintiff denied having trouble concentrating or memory difficulties. See Tr. 447. Her records also indicate that plaintiff's anxiety and autism were "stable under the care of psychiatry[]" and that plaintiff's "ADD" was "stable on daily Adderall, under the care of psychiatry[.]" Tr. 424 (sic).

Dr. Hakim opined that plaintiff's "orientation, memory, attention and concentration" were "all intact[.]" Tr. 341. Dr. Hakim further noted that although plaintiff would experience impairment "in times of severe anxiety[,]" "with medications there is some improvement." Id. Norwich Psychiatric Center records consistently assessed plaintiff as having fair concentration, memory, judgment, and insight. See Tr. 572. LMFT Dean's treatment notes indicate that plaintiff "didn't feel disabled[,]" Tr. 594, and that plaintiff was "[d]eveloping new software and maintaining routines." Tr. 597.

Plaintiff testified that she would spend three to five hours a day working on math problems. See Tr. 39. Plaintiff

further testified that she watches technical lectures, reads reference manuals, and learns scripting for 3D art software. See Tr. 44-45.

The ALJ also correctly noted that the record reflects that plaintiff continued looking for work. Dr. Hakim noted that plaintiff was looking for jobs and volunteer opportunities, see Tr. 362, and LMFT Dean discussed plaintiff's efforts to find employment, see Tr. 598. Plaintiff also testified that she received unemployment benefits following the termination of her employment at Mohegan. See Tr. 37. "Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that [she] was ready, willing, and able to work during the time period for which [she] claims disability benefits as adverse factors in the ALJ's credibility determination." Felix v. Astrue, No. 11CV3697(KAM), 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) (collecting cases).

The ALJ discussed the factors in 20 C.F.R. §404.1529(c)(3) that were "relevant to his credibility determination" and his decision contained "specific reasons for the finding on credibility, supported by the evidence in the case record[.]" Cichocki, 534 F. App'x at 76. "Although the ALJ did not explicitly recite the seven relevant factors, his credibility determination was supported by substantial evidence in the

record." Id. Therefore, the Court defers to the ALJ's credibility finding. See Monzeglio v. Comm'r of Soc. Sec., No. 17CV760(JPO), 2018 WL 1578228, at *4 (S.D.N.Y. Mar. 28, 2018) ("[C]ourts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while testifying."); Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) ("We have no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for his ruling.").

### E.    RFC

Plaintiff argues that the "ALJ's RFC is inconsistent with his own prior findings and is not supported by substantial evidence." Doc. #17-1 at 19. Defendant argues the RFC adequately accounts for plaintiff's limitations. See Doc. #22-1 at 14-15.

Plaintiff's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §404.1545(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1545(a)(1), (3).

Plaintiff first argues that the "ALJ's finding that the claimant can perform work at all exertional categories is error." Doc. #17-1 at 20 (sic). Plaintiff states that "the ALJ failed to find that the claimant had any severe impairments, despite the opinion of the consultative examiner that [she] was

limited to light work, and despite other evidence in the record." Tr. 20. However, for reasons previously stated, the ALJ's decision to accord Dr. Reiher's opinion little weight and the ALJ's finding that plaintiff did not have physical impairments that significantly limit her ability to perform basic work activities are supported by substantial evidence.

Plaintiff next contends that the RFC fails to address plaintiff's impairments in concentration, persistence, and pace. See Doc. #17-1 at 20-21. However, the RFC accounts for these limitations by restricting plaintiff to simple, routine, repetitive tasks in two-hour segments. See West v. Berryhill, 298 F. Supp. 3d 577, 579 (W.D.N.Y. 2018) (holding that the RFC that plaintiff can maintain concentration and focus for up to two hours at a time and is limited to simple instructions and tasks sufficiently accounts for "limitations in pace-keeping" and "moderate difficulties in concentration"); Jiminez v. Colvin, No. 16CV6350(DGL), 2018 WL 459301, at *3 (W.D.N.Y. Jan. 18, 2018) ("District courts in this circuit have held that an RFC which includes the ability to concentrate for up to two hours at a time ... is sufficient to account for moderate limitations in attention and concentration."); Freitas v. Colvin, No. 3:14CV789(DFM), 2016 WL 7407706, at *3 (D. Conn. Dec. 22, 2016) ("The ALJ's step 3 finding that plaintiff has moderate limitations in concentration, persistence and pace is

74

not inconsistent with his mental RFC determination that plaintiff has the attention span to perform simple work tasks for two-hour intervals throughout an eight-hour workday."); Bartell v. Comm'r of Soc. Sec., No. 5:13CV843(GLS)(ESH), 2014 WL 4966149, at *4 (N.D.N.Y. Sept. 30, 2014) (finding "RFC to perform a full range of work at all exertional levels, but is limited to simple, repetitive work with no reading requirement" was "consistent with her determination that [plaintiff] had moderate difficulties in the area of concentration, persistence, and pace[]"). Accordingly, the Court finds that substantial evidence, as discussed throughout this decision, supports the ALJ's RFC determination and there is no error.

### F.    Vocational Expert

In determining that plaintiff can perform a significant number of jobs in the national economy, the ALJ relied on the VE's testimony that plaintiff "would be able to perform the requirements of representative occupations[,]" including: garment folder, bander, and laundry laborer. Tr. 22.

Plaintiff argues that the "testimony of the Vocational Expert was unreliable and the ALJ erred in relying on it[.]" Doc. #17-1 at 36. Defendant contends that "the ALJ properly relied on the testimony of the VE that jobs existed in the national economy that were suited to Plaintiff's vocational factors and RFC[.]" Doc. #22-1 at 21.

75

First, plaintiff contends that the VE based her finding that garment folder, bander, and laundry laborer only have brief and superficial interaction with co-workers on her expertise, rather than on the DOT. See Doc. #17-1 at 36-37. This argument is without merit.

In the Dictionary of Occupational Titles ("DOT"), the fifth digit of the occupational code expresses the degree to which a "job requires a worker to function" in relation to people. DICOT 1991 WL 688701 (G.P.O.). "[F]unctions which are less complicated" are assigned "higher numbers." DICOT 1991 WL 688701 (G.P.O.). Eight is the highest possible fifth digit that can be assigned. See id. Each of the jobs identified by the VE has eight[8] in the fifth digit of the occupational code, and the descriptions indicate: "People: 8 - Taking Instructions-Helping N - Not Significant[.]" DICOT 789.687-066 (G.P.O.), 1991 WL 681266; DICOT 762.687-010 (G.P.O.), 1991 WL 680463; DICOT 361.687-018 (G.P.O.), 1991 WL 672992. Therefore, the DOT expressly indicates that interacting with people is not a significant aspect of each of the jobs identified by the VE.

---

[8] An eight in the fifth digit indicates that the job requires: "Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." DICOT 1991 WL 688701 (G.P.O.).

The VE also testified that she based her finding on her "40 years of experience." Tr. 57. Despite plaintiff's assertion to the contrary, a VE may testify about aspects of jobs beyond the DOT descriptions. See Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) ("Whereas the Dictionary describes jobs as they are generally performed, an expert is often called upon to explain the requirements of particular jobs, and as such, his deviations from the Dictionary in such testimony do not actually 'conflict' with the Dictionary. Many specific jobs differ from those jobs as they are generally performed, and the expert may identify those unique aspects without contradicting the Dictionary."). The VE's experience is a valid basis for her testimony. See Bonifacio v. Comm'r of Soc. Sec., No. 11CV779(DRH), 2012 WL 3202880, at *5 n.5 (N.D.N.Y. Aug. 3, 2012) ("Reliance on the VE's experience is appropriate.").

Finally, plaintiff contends that the "VE had no basis for the number of jobs to which [she] testified, other than guesswork." Doc. #17-1 at 38. "[A] vocational expert is not required to identify with specificity the figures or sources supporting [her] conclusion, at least where [she] identified the sources generally." McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014) (citations omitted). Here, the VE testified that she relied on the "standard occupation" classifications in the "Bureau of Labor Statistics data[.]" Tr. 58. She went on to

state: "[B]ased on my experience, combined with Bureau of Labor Statistics data, I eliminate as many jobs as I think are not appropriate within the hypothetical, and the number I give is an estimate." Tr. 59. This is a sufficient basis for the VE's testimony regarding the number of jobs available in the national economy. See Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), aff'd, 515 F. App'x 32 (2d Cir. 2013) ("The VE utilized reliable statistical sources as well personal knowledge and experience to develop the occupational projections provided. While the VE did not provide a step-by-step description of the methodology used, this Court cannot say that the ALJ erred in accepting the VE's testimony as reliable, as there was a sufficient basis for the ALJ to so find."); Galiotti v. Astrue, 266 F. App'x 66, 68 (2d Cir. 2008) (finding the ALJ did not err by relying on the VE's testimony regarding the number of jobs in the national economy where the VE "identified the sources he generally consulted to determine such figures").

Accordingly, the ALJ did not err in relying on the VE's testimony.

## VI. CONCLUSION

For the reasons set forth herein, the Court finds that the decision of the ALJ is supported by substantial evidence in the record and no legal error was committed. Therefore, defendant's Motion for an Order Affirming the Commissioner's Decision is

**GRANTED. [Doc. #22].** Plaintiff's Motion for Reversal or Remand

of Commissioner's Decision is **DENIED. [Doc. #17].**

SO ORDERED at New Haven, Connecticut, this 28th day of

August, 2018.

_____/s/_____

HON. SARAH A. L. MERRIAM

UNITED STATES MAGISTRATE JUDGE
